# IN THE COURT OF APPEALS OF IOWA

No. 16-2024
Filed February 8, 2017

**IN THE INTEREST OF K.B., D.B., and A.B.,**
**Minor Children,**

**K.B., Father,**
        Appellant,

**M.K., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Jackson County, Phillip J. Tabor,

District Associate Judge.


        A father and mother appeal separately from the order terminating their

parental rights.  **AFFIRMED ON BOTH APPEALS.**


        Matthew W. Boleyn of Reynolds & Kenline, L.L.P., Dubuque, for appellant

father.

        Taryn R. Purcell of Blair & Fitzsimmons, P.C., Dubuque, for appellant

mother.

        Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer,

Assistant Attorney General, for appellee State.

        Mark W. DeVries, Bellevue, attorney and guardian ad litem for minor

children.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.  Tabor, J.,

takes no part.

**MULLINS, Presiding Judge.**

A father and mother appeal separately from the juvenile court's order terminating their parental rights to their three children. They both argue the State failed to prove the statutory grounds for termination by clear and convincing evidence, an exception to termination exists due to their bond with the children, and the juvenile court should have granted their requests for additional time to work toward reunification. Upon our de novo review, we affirm on both appeals.

## I.     Background Facts and Proceedings

The father and mother have three children involved in this case: K.B., born in August 2011; D.B., born in January 2013; and A.B., born in December 2014.[1] All three children have profound developmental delays or special medical needs.[2]

The family came to the attention of DHS in April 2015, due to concerns regarding the unsanitary conditions of the family's home. The parents voluntarily placed K.B. and D.B. in family foster care. The parents, with A.B., moved in with the mother's parents. K.B. and D.B. were returned to the parents' custody in May 2015. The parents and all three children continued to live with the maternal grandparents until October when the family moved into transitional housing. That

---

[1] The parents have a fourth child together, born in March 2016, who has remained in the parents' custody since birth and is not involved in this case.

[2] K.B. is autistic and has a profound developmental delay. When the Iowa Department of Human Services (DHS) first became involved with the family, K.B. had a limited vocabulary and was not toilet trained. D.B. had been diagnosed with failure to thrive, was unable to walk—having spent the majority of his time in a high chair in front of the television, and was below the fifth percentile of development. D.B. was also unable to eat solid foods. A.B. was born sixteen weeks premature and had attendant physical-development problems, which required frequent medical appointments. A.B. also suffered from intellectual delays and a malformed head due to lying in the same position for long periods of time.

same month, the children were adjudicated children in need of assistance (CINA). In November, the family was evicted from the transitional housing facility due to the parents' noncompliance with the rules. The parents moved back in with the mother's parents, and all three children were voluntarily placed in family foster care together.

In July 2016, the parents moved into a four-bedroom home with adequate space and furnishings for all four of the children. In September, the State filed a petition to terminate the parents' parental rights. The parents had one weekend overnight visit in late October that was moderately successful. Workers involved in the case testified that when the children were picked up from the visit the children were hungry and two of the children had had toileting accidents.

The court held a termination hearing in November. The DHS social worker testified she was concerned about the parents' ability to maintain stable housing for any extended period of time because the parents were unemployed and relying on the father's disability payments as their sole source of income. The DHS worker also expressed concerns about the parents' mental-health needs, cleanliness in the home, and the parents' abilities to provide for the children's other basic needs, including food and medical and educational needs.

The Family Safety, Risk, and Permanency (FSRP) services provider testified the parents had been cooperative but were not internalizing the parenting skills they were learning. He testified the parents were unable to identify the children's needs, including when the children needed to use the bathroom or when they were hungry. He testified the parents played with their children appropriately and provided them with appropriate meals during visits.

He also testified the parents clearly loved the children, but he stated he did not observe a reciprocal bond from the children toward their parents.

Following the hearing, the juvenile court terminated the father's and mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h) (2016).  The father and mother separately appeal.

## II.　　Standard of Review

We review termination-of-parental-rights proceedings de novo.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)).  Our primary consideration is the best interests of the child.  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.　　Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis."  *In re M.W.*, 876 N.W.2d at 219.  First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence.  *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219.  Second, if the State established statutory grounds for termination, we consider whether termination is in the children's best interests under section 232.116(2).  *See In re M.W.*, 876 N.W.2d at 219–20.  Finally, we consider whether any exceptions under section 232.116(3) weigh against termination.  *See id.* at 220.

### A. Statutory Grounds

The juvenile court terminated the parents' parental rights to K.B. pursuant to Iowa Code section 232.116(1)(f) and D.B. and A.B. pursuant to section 232.116(1)(h). Section 232.116(1)(f) provides the court may terminate a parent's parental rights if the State proves by clear and convincing evidence the child (1) is four years of age or older; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. Under section 232.116(1)(h), the court may terminate parental rights if the court finds the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parent at the time of the termination hearing.

The parents do not dispute the first three elements of paragraphs (f) and (h): At the time of the termination hearing, K.B. was over the age of four and D.B. and A.B. were age three or younger; all three children were adjudicated CINA in October 2015; and all children have been removed from the parents' physical custody since November 2015, with no trial periods at home greater than thirty days. Instead, both parents complain the State failed to prove by clear and

convincing evidence the children could not be returned to their custody at the time of the termination hearing.

The father asserts the children could have been returned to his custody at the time of the hearing because he had made great strides with his own physical abilities and had eliminated his reliance on the mother in caring for the children. He further asserts he was involved in mental-health therapy and medication management as required by the case plan. The mother maintains the parents were living with their youngest child in adequate and safe housing with sufficient furnishings. She asserts they were taking care of maintenance issues with their landlord and had learned how to navigate the local bus system for transportation. She also contends they had had a successful overnight visit with the children.

Although we recognize the parents made progress, neither parent was able to care for their children safely at the time of the termination hearing. The juvenile court found the only thing the parents had done to address the case plan goals was to obtain housing, but it noted their ability to maintain such housing was "very questionable." The parents continued to struggle with keeping the home clean and had not addressed their financial or transportation issues. The parents both had valid drivers' licenses but lacked reliable transportation. During the pendency of the CINA case, DHS scheduled transportation for the parents for visits with the children on all but two occasions, yet the parents were still only able to attend about half of their scheduled visits with their children. On more than one occasion, the parents requested that a visit end early because the children were fussy or tired. Due to the children's special needs, they also had frequent doctor appointments. The parents were required to schedule their own

free transportation to the children's medical appointments but missed several without any explanation.

Prior to the children's placement in foster care, the children did not regularly attend school or participate in available educational services that were designed to improve the children's developmental progress. The parents did not ensure the children attended their medical appointments or had evaluations completed. In fact, the mother admitted she was unable to understand all of the children's medical and developmental needs. The father was unable to care for the children without the mother's help due to his own physical limitations.

Additionally, the parents had unresolved mental-health issues. The mother agreed her participation in mental-health services was important to the case plan. Up until the parents' move in July 2016, both parents regularly participated in mental-health therapy and medication management. However, in the four months leading up to the termination hearing, the parents had only participated in initial intake evaluations at a facility in their new community. The father missed a visit with his children in order to complete his intake evaluation, even though the evaluations were walk-in and he could have completed it at another time. Both parents testified their participation in therapy was not beneficial to them; however, the father acknowledged his treatment with medication for depression was helpful.

At the time of the termination hearing, the children were placed in a foster home that specifically cared for children with special needs.[3] The children were doing well here, and the mother admitted the children had "made leaps and bounds with speech and development" since entering foster care, due in large part to the foster parents' involvement with educational services that had also been offered to the parents. Both the DHS worker and the FSRP provider testified the children could not be returned to their parents' care at the time of the termination hearing.

On our de novo review of the record, we find the State proved by clear and convincing evidence the children could not be returned to the custody of either parent at the time of the termination hearing. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Insight for the determination of the child[ren]'s long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981))). We affirm the termination of the parents' parental rights under section 232.116(1)(f) as to K.B. and (h) as to D.B. and A.B.

### B.    Best Interests

If we determine the State has established the statutory grounds for termination, we then consider whether termination is in the children's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 224. Neither parent argues termination was not in the children's best interests; therefore, the

---

[3] The foster home was not a preadoptive placement. However, we will not refuse to terminate the rights of a parent that would otherwise be terminated because an adoptive home has not been secured. *In re T.C.*, 522 N.W.2d 106, 109 (Iowa Ct. App. 1994).

issue is waived. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments.").

### C.    Exception to Termination

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d at 225. "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d at 113 (citation omitted).

Both parents assert they share a bond with their children that weighs against termination of their parental rights. *See* Iowa Code § 232.116(3)(c) (providing a court may decide not to terminate a parent's parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

The parents obviously love their children and called them almost daily while they were in foster care.[4] However, the father admitted at the termination hearing that he did not have a bond with A.B. Further, the FSRP provider testified he did not observe a bond between the children and their parents.

Upon our review of the record, we do not find the parents' bonds with their children justify a continued delay of permanency, which these young children need and deserve. *See id.* at 707 ("We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)). Accordingly, we do not find any permissive factors under section 232.116(3) exist that weigh against termination of the father's or mother's parental rights.

### D. Additional Six Months

Both parents also argue the juvenile court abused its discretion in denying them an additional six months to work toward reunification with their children. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension if it determines "the need for removal of the child[ren] from [their] home will no longer exist at the end of the additional six-month period."

We must now view this case with a sense of urgency. *See In re C.B.*, 611 N.W.2d at 495. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa

---

[4] However, the DHS social worker testified the children were "not verbal enough to express their needs or what's going on in their lives," and the parents were not asking for updates from the foster parents.

2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)); *see also In re J.E.*, 723 N.W.2d at 800 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (citation omitted)). "[A]t some point, the rights and needs of the child[] rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009).

Based upon our de novo review of the record, we are not persuaded the need for removal would no longer exist at the end of six months. *See* Iowa Code § 232.104(2)(b). Accordingly, we affirm the juvenile court's denial of the parents' requests for an additional six months.

## IV.     Conclusion

We have carefully reviewed the record, the briefs of the parties, and the juvenile court's ruling. Upon our de novo review, we conclude the State proved the statutory grounds for termination of the father's and mother's parental rights by clear and convincing evidence and termination is in the children's best interests. We further find no permissive factors weighing against termination exist so as to preclude termination. The juvenile court correctly denied the parents' requests for additional time to work toward reunification. Accordingly, we affirm.

**AFFIRMED ON BOTH APPEALS.**